UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMUEL AMBROSE,

                Petitioner,

v.                                                    Case Number 08-12502
                                                     Honorable Thomas L. Ludington

KENNETH ROMANOWSKI,

                Respondent.
_____/

**ORDER GRANTING PETITIONER'S MOTION TO APPOINT COUNSEL,
GRANTING PETITIONER'S MOTION FOR EVIDENTIARY HEARING,
DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT,
DENYING PETITIONER'S MOTION TO COMPEL AS MOOT,
AND REFERRING MATTERS TO MAGISTRATE JUDGE**

In the early morning hours of April 17, 1979, Petitioner Samuel Ambrose gravely injured Kenneth Brown outside a Detroit bar. After Mr. Brown died from the injuries that Petitioner had inflicted, Petitioner was charged with second degree murder.

Sometime later, evidence in the record suggests, the prosecution offered a plea agreement to Petitioner's counsel: if Petitioner entered a guilty plea to a charge of manslaughter, the prosecution would agree to a sentence of five to fifteen years imprisonment.[1] Counsel never communicated this plea offer to Petitioner, he asserts.

Consequently, Petitioner went on trial for Mr. Brown's murder in Michigan state court in November 1979. Petitioner's theory of the case was that he acted in self-defense. He asserted

---

[1] Petitioner supports his allegation by attaching a document titled "re-pretrial notice" to his habeas petition and a letter from the judge who interlineated "manslaughter 5–15" on the face of the notice. 2254 Petition App. G, ECF No. 2. The "re-pretrial notice" is addressed to Petitioner's counsel, not Petitioner, and instructs: "The defense attorney upon receipt of this re-pretrial notice must: (a) notify defendant personally by certified mail; or (b) notify the bondsman if defendant is on surety bond." *Id*. The judge writes "I have no recollection of this case, and the writing appears to be mine." *Id*.

that Mr. Brown had previously robbed Petitioner at gunpoint, started the altercation that night, and that Petitioner was merely defending himself. The prosecution's theory was that Petitioner acted out of anger, not self-defense, instigating the altercation, striking Mr. Brown to the ground, and then repeatedly kicking him in the head while he lay immobile. The jury found Petitioner guilty of second degree murder. It was Petitioner's first conviction. The judge sentenced Petitioner to life imprisonment without the possibility of parole.

For the next twenty-nine years, Petitioner challenged his confinement in Michigan state courts. Among his claims was one asserting ineffective assistance of counsel for not communicating the plea offer to Petitioner. He exhausted his state remedies in March 2008.

In June 2008, Petitioner filed a pro se petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Among his twelve claims, Petitioner again raised a claim of ineffective assistance of counsel based on his counsel not communicating the plea offer to Petitioner. Respondent Kenneth Romanowski, warden of the state correctional facility that has custody of Petitioner, moved for summary judgment arguing that Petitioner's habeas petition was time-barred under 28 U.S.C. § 2244(d)(1). The Court granted Respondent's motion. Petitioner appealed.

On February 10, 2011, the Sixth Circuit issued an opinion finding that Petitioner had made at least a prima facie valid equitable tolling argument. Accordingly, the Sixth Circuit vacated this Court's judgment and remanded the case for further proceedings. The Court then directed Respondent to file a brief addressing equitable tolling, or, if Respondent conceded the issue, addressing the merits of Petitioner's arguments. Conceding the equitable tolling issue, Respondent has taken up the petition on the merits and asserted that he is entitled to judgment as none of Petitioner's claims entitle him to relief. ECF No. 33.

Petitioner, in turn, has filed a motion for summary judgment (ECF No. 39), a motion to compel production of Rule 5 materials (ECF No. 41), a motion for an evidentiary hearing (ECF No. 42), and a motion for appointment of counsel (ECF No. 43).

"The decision to appoint counsel for a federal habeas petitioner," the Sixth Circuit instructs, "is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986) (citing 18 U.S.C. § 3006A(g); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983); *Norris v. Wainwright*, 588 F.2d 130, 133 (5th Cir. 1979); *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)).

As explained more fully below, given colorable ineffective assistance of counsel claim that Petitioner has raised, the fact-intensive nature of his assertion, and the limitations on Petitioner's ability to gather additional evidence because of his incarceration, the interests of justice require appointing counsel for Petitioner and holding an evidentiary hearing. Petitioner's motions for an evidentiary hearing and for appointment of counsel will be granted.

Because Petitioner cogently directed the Court to genuine issues of fact regarding the purported plea offer, however, summary judgment is inappropriate at this time. Plaintiff's motion for summary judgment will be denied without prejudice.

Likewise, since Petitioner's counsel will be entitled to access the Rule 5 materials filed by Respondent and share them with Petitioner, Petitioner's motion to compel production of these materials will be denied as moot.

Finally, pursuant to 18 U.S.C. § 636(b)(1)(B), the Court will refer the evidentiary hearing to Magistrate Judge Charles Binder for a report and recommendation on whether Petitioner's ineffective assistance of counsel claim warrants habeas corpus relief.

# I

## A

In the early morning hours of April 17, 1979, Petitioner gravely injured Kenneth Brown. About two weeks later, Mr. Brown died of the injuries Petitioner inflicted. Petitioner attacked Mr. Brown about 1 a.m. outside the bar in which Petitioner had been drinking, four eyewitnesses would later testify at Petitioner's trial.

The first witness, Marvin Smith, was an acquaintance of Petitioner's. Mr. Smith testified that he saw Petitioner watching Mr. Brown talking to a woman before the attack. Trial Tr. 186–219, Nov. 16, 1979. When Mr. Brown completed his conversation, Petitioner approached, hit him, knocking him to the ground. *Id.* While Mr. Brown lay immobile on the ground, Petitioner hit Mr. Brown again several times, and then repeatedly kicked him in the head. *Id.*

A second witness, Kenneth Ferguson, similarly testified that he saw Petitioner approach Mr. Brown, strike him, knock him to the ground, kick him in the ribs, and then repeatedly stomp on his chest with both feet. *Id.* at 220–25. After the assault ended, Mr. Ferguson approached Mr. Brown, recounting at trial: "[He] was bleeding from the mouth. I remember it was all red. You could barely see teeth. I thought maybe he would be swallowing those. He was bleeding from both nostrils and at least his left ear. The blood had trickled from the inner ear on out, down the lobe and onto the neck." *Id.* at 226. Checking Mr. Brown's vitals, Mr. Ferguson did not hear signs of life: "I listened to hear air passage or didn't hear — I remember I didn't hear a heartbeat. I lifted the man's eyelid. His eyes had rolled back into his head. He was lying back. There was no — there was no response from his pupils at the time. . . . And then the EMS came and then the police officers, and I yelled into his ear to see if that would get any response to him. Nothing. I screamed." *Id.*

A third witness, Oliver Flowers, testified that he was a good friend of Petitioner and had been drinking with Petitioner before the incident. *Id*. at 233–34. After the two men left the bar, Mr. Flowers saw Mr. Brown approach Petitioner and begin to argue. Id. at 239. Mr. Brown then grabbed Petitioner, Mr. Flowers testified, recounting: "They were still arguing. [Petitioner] was pulling away from his grip. . . . He wouldn't let go, so [Petitioner] hit him." *Id*. at 240. The blow knocked Mr. Brown to the ground, where he lay immobile. *Id*. at 241. Petitioner then began to curse at Mr. Brown, hit him in the face, and kick him in the chest. *Id*. "I went to grab him," Mr. Flowers recalled, "and [Petitioner] pushed me away. . . He went back to [Mr. Brown]." *Id*. at 243. Petitioner resumed hitting and kicking Mr. Brown, and so Mr. Flowers went back into the bar for help. *Id*. at 243–46. Eventually, Petitioner stopped the assault and walked away. A short time later, police arrested Petitioner at a nearby restaurant. *Id*. at 265–66.

A fourth witness, Jean Matthews, testified that she was the common law wife of the Mr. Brown. Trial Tr. 277–78, Nov. 19, 1979. She had been talking to Mr. Brown immediately before the assault began, she testified. Id. As Mr. Brown left the bar, she recalled, Petitioner "hit him with a cane." *Id*. at 281. The blow knocked Mr. Brown to the ground, where he lay immobile. *Id*. at 282–83. While he lay motionless, Ms. Matthews testified, "[Petitioner] just kept punching him in the face, and then he would kick him in his face and his head, you know, just kept doing it, and jumping up in his head and his neck." *Id*. at 284.

Petitioner also provided his version of events at trial. He explained that Mr. Brown had robbed Petitioner at gunpoint two years earlier. *Id*. at 323. When Petitioner left the bar in the early morning hours of April 17, 1979, Mr. Brown again accosted Petitioner. "Give me some money," Petitioner recalled Mr. Brown demanding, continuing: "The answer came out of my mouth, 'No,' and he went towards his waistband and I hit him. . . . He went out and his — his —

when his arm was on my wrist, his hand, the pull from that and he was still trying to get what was down by his waistband, and I went to hit him and I hit him about three or four times. I kicked him several times." *Id*. at 325–26. Explaining his actions, Petitioner testified that Mr. Brown "led me to believe that he had a weapon, a gun or a knife. . . . I didn't have no intention of killing him. I just wanted him to leave me alone and don't bother me. . . . All I was trying to do was defend myself." *Id*. at 326, 328. Petitioner testified that after being arrested on April 17, 1979, he was held overnight. *Id*. at 352. The next day he was released. *Id*.

Following the altercation, Mr. Brown was hospitalized. On May 2, 1979, he died from his injuries. The medical examiner determined that the cause of death was multiple blunt injuries to the left side of the neck and left side of the head with contusions of the brain and bleeding.

**B**

On May 3, 1979, a "reverse writ" of habeas corpus was issued by Judge Robert VanWiemeersch.[2] The next day, Petitioner was arraigned on a charge of second degree murder in violation of § 750.317 of the Michigan Compiled Laws. He entered a plea of not guilty.

Crucial to the matter presently before the Court, the record contains evidence that sometime before trial the prosecution communicated to Petitioner's counsel a plea offer of a reduced charge of manslaughter with a sentence of five to fifteen years. *E.g.*, 2254 Petition App. G. Petitioner's counsel, Petitioner asserts, did not communicate the offer to him.

Trial commenced in November 1979 in the Recorder's Court of Detroit, Michigan. The prosecution's theory of the case was that Petitioner assaulted Mr. Brown out of anger.

---

[2] "The reverse writ proceeding is informal and without any documentation. It is the local police method of seeking judicial approval for extended detention of an arrestee without benefit of a warrant." *People v. Johnson*, 271 N.W.2d 177, 178 n.5 (1978).

Petitioner's theory was that he had acted in self-defense. The jury convicted Petitioner of second degree murder. Petitioner was sentenced to life imprisonment on December 7, 1979.

## C

For the next twenty-nine years, Petitioner challenged his confinement in Michigan state courts. His challenges began when Petitioner filed a direct appeal of right in the Michigan Court of Appeals, asserting jury instructional errors and evidentiary errors. In 1981, the Michigan Court of Appeals issued an opinion affirming Petitioner's convictions and sentence. *People v. Ambrose*, No. 49968 (Mich. Ct. App. Sept. 29, 1981) (unpublished). Petitioner then filed an application for leave to appeal from that decision in the Michigan Supreme Court, raising the same claims as raised in the court of appeals. The Michigan Supreme Court denied Petitioner's application. *People v. Ambrose*, No. 69098 (Mich. May 17, 1983) (unpublished).

Petitioner then filed a petition for writ of habeas corpus in state court. In 1987, the petition was denied. *In re Ambrose*, No. 87-44400-AH (Jackson Ctny. Cir. Ct., Apr. 23, 1987) (unpublished). Petitioner then filed a complaint for habeas corpus in the Michigan Court of Appeals, which was dismissed on the merits. *Ambrose v. Jackson Prison Warden*, No. 100550 (Mich. Ct. App. Aug. 26, 1987) (unpublished). Petitioner next filed a delayed application for leave to appeal in the Michigan Supreme Court, which was likewise denied. *Ambrose v. Jackson Prison Warden*, No. 81735 (Mich. Feb. 29, 1988) (unpublished). On May 31, 1988, the Michigan Supreme Court also denied Petitioner's motion for reconsideration.

In 1996, Petitioner moved for relief from the judgment in the Recorder's Court of Detroit. In his first argument, Petitioner asserted his counsel was ineffective by not disclosing a plea offer made by the prosecutor. Specifically, Petitioner asserted that "defendant's former attorney Oliver Nelson had been conveyed a prosecutors' plea offer to a manslaughter conviction and

sentence 5–15 yrs., but was appointed a Juvenile Referee and suffered a heart attack shortly before the trial. Defense counsel Richard Nelson was appointed to replace attorney Oliver Nelson and failed to disclose prosecutor Robert Pearl's plea offer [to Petitioner]. . . . Defendant would have accepted the prosecutor's plea offer, and as a result of defense counsel's failure to disclose the plea offer was prejudiced by defense counsel's performance." R. at 32 (internal citations omitted). In support, Petitioner attached a copy of a "re-pretrial notice" on which "manslaughter 5–15" was interlineated by the trial judge, Chief Judge Samuel Garner. *See* 2254 Petition App. G, ECF No. 2. Judge Garner, who later re-entered private practice, wrote of the interlineation: "I have no recollection of this case, and the writing appears to be my writing." *Id*.

The Recorder's Court denied the motion on September 3, 1996. *People v. Ambrose*, No. 79-002765-01 (Mich. 3d Jud. Cir. Ct., Sept. 3, 1996) (unpublished). Petitioner applied for leave to appeal that decision in the Michigan Court of Appeals, which was denied. *Ambrose v. Rec's Ct. Judge*, No. 198854 (Mich. Ct. App. Nov. 4, 1997) (unpublished). Petitioner filed a delayed application for leave to appeal that decision in the Michigan Supreme Court, which was also denied. *Ambrose v. Rec's Ct. Judge*, No. 110990 (Mich. Oct. 26, 1998) (unpublished).

Eight years later, Petitioner filed another motion for relief from judgment, which was denied on January 26, 2006. *People v. Ambrose*, No. 79-02765 (Mich. 3d Jud. Cir. Ct., Jan. 26, 2006) (unpublished). Petitioner filed a delayed application for leave to appeal that decision in the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Ambrose*, No. 275571 (Mich. Ct. App. June 18, 2007) (unpublished). Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court, which was denied on December 28, 2007. *People v. Ambrose*, 742

N.W.2d 368 (Mich. 2007). His motion for reconsideration from that decision was denied on March 24, 2008. *People v. Ambrose*, 745 N.W.2d 795 (Mich. 2008).

In none of these decisions (which were, it must be acknowledged, nearly all unpublished), did the state courts specifically address the claim that Petitioner's counsel was ineffective for not communicating the prosecution's manslaughter plea offer to Petitioner.

**D**

On June 11, 2008, Petitioner filed a petition for a writ of habeas corpus in this Court. The petition asserts twelve grounds for relief. Pertinent to the matter now before the Court, the eleventh ground for relief claims that Petitioner's counsel was ineffective in plea negotiations. Although Petitioner's present papers are not altogether clear on the issue, in pertinent part they allege "Chief Judge Samuel Gardner made a notation of the Wayne County Prosecutor and Petitioner's plea and sentencing agreements of 5 years minimum to 15 years maximum to the reduced charge of manslaughter. During the Re-pretrial proceedings Petitioner was without the assistance of Oliver Nelson, Defense Counsel. Petitioner would have accepted the plea and sentencing agreements." Pet'r's Br. 36.

In August 2008, Petitioner moved to proceed in forma pauperis. ECF No. 5. In September 2008, the motion was granted pursuant to 28 U.S.C. § 1915(a). ECF No. 7.

On December 16, 2008, Respondent filed a motion for summary judgment, arguing that Petitioner's habeas petition was not timely filed under 28 U.S.C. § 2244(d)(1). The Court granted Respondent's motion on June 30, 2009. Subsequently, Petitioner filed an appeal with the United States Court of Appeals for the Sixth Circuit. On February 10, 2011, the Sixth Circuit vacated this Court's judgment and remanded the case for further proceedings, explaining that Petitioner had made a colorable equitable tolling argument that must be considered.

This Court then directed Respondent to file a brief addressing the equitable tolling issue. The Court further directed that if Responded conceded the issue, he should address the merits of Petitioner's habeas application. Respondent's brief conceded the equitable tolling issue, taking up the merits of the habeas application instead. ECF No. 33.

Petitioner, in turn, filed a motion for summary judgment, a motion to compel Rule 5 materials, a motion for an evidentiary hearing, and a motion for appointment of counsel.

## II

The statutory authority of federal courts to grant habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254 provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

§ 2254(d)(1). The Supreme Court instructs that under § 2254 "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).

Although § 2254 "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," the Court elaborates, it authorizes issuance of the writ only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Id*.

## III

"In all criminal prosecutions," the Sixth Amendment provides, "the accused shall enjoy the right . . . to have the assistance of counsel in all criminal prosecutions." U.S. Const. amend. VI. "The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

To establish the converse — that a defendant's constitutional rights were violated because of ineffective assistance of counsel — a defendant must establish two elements. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Second, the defendant must show that he was prejudiced by the ineffective assistance. *Id.* at 692. That is, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.*

As noted, the Supreme Court cautions that § 2254 authorizes habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). "If this standard is difficult to meet," the Court cautions, "that is because it was meant to be." *Id.*

Nevertheless, in two decisions issued this term the Supreme Court granted habeas relief to petitioners alleging ineffective assistance of counsel regarding plea bargaining. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384–91 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1407–11 (2012). First, in *Frye* the Court wrote that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." 132 S. Ct. at 1408. "When defense counsel allowed the offer

to expire without advising the defendant or allowing him to consider it," the Court elaborated, "defense counsel did not render the effective assistance the Constitution requires." *Id*.

Next, in *Lafler* the Court held that "a reliable trial does not foreclose relief when counsel has failed to assert rights that may have altered the outcome." 132 S. Ct. at 1388. "The fact that respondent is guilty," the Court cautioned, "does not mean he was not entitled by the Sixth Amendment to effective assistance or that he suffered no prejudice from his attorney's deficient performance during plea bargaining." *Id*.

In this case, as noted, Petitioner alleges that the prosecution offered a plea agreement to Petitioner's counsel, but that counsel never communicated this plea offer to Petitioner. The record contains some evidence supporting this allegation. Specifically, Petitioner attaches a copy of a pretrial notice on which "manslaughter 5–15" was interlineated by a state judge, Judge Samuel Garner. *See* 2254 Petition App. G, ECF No. 2. He also attaches a letter from Judge Garner, who writes: "I have no recollection of this case, and the writing appears to be my writing." *Id*. As a person in state custody, however, Petitioner's ability to develop further evidentiary support for his argument is limited. He is not able to depose witnesses, for example. Likewise, Petitioner's present papers are not a not a model of pellucid pleading.

As a general matter, of course, "the constitutional right to counsel in criminal prosecutions provided by the Sixth Amendment does not apply to an application for a writ of habeas corpus, which is a civil proceeding." *Barker v. State of Ohio*, 330 F.2d 594, 594 (6th Cir. 1964) (collecting cases); *see also Post v. Bradshaw*, 422 F.3d 419, 425 (6th Cir. 2005) ("there is no constitutional right to counsel in habeas proceedings."). "The decision to appoint counsel for a federal habeas petitioner," the Sixth Circuit instructs, "is within the discretion of the court and is required only where the interests of justice or due process so require." *Mira v. Marshall*, 806

F.2d 636, 638 (6th Cir. 1986) (citing 18 U.S.C. § 3006A(g); *Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983); *Norris v. Wainwright*, 588 F.2d 130, 133 (5th Cir. 1979); *LaClair v. United States*, 374 F.2d 486, 489 (7th Cir. 1967)).

In this case, the record contains evidence that sometime before trial the prosecution communicated to Petitioner's counsel a plea offer — a reduced charge of manslaughter with a sentence of five to fifteen years. *See, e.g.*, 2254 Petition App. G. But Petitioner's counsel, Petitioner alleges, did not communicate the offer to him.

Given the colorable claim that Petitioner has raised, the fact-intensive nature of the assertion, and the limitations on Petitioner's ability to offer additional evidence to establish the claim, appointing counsel for Petitioner and holding an evidentiary hearing is appropriate. Petitioner's motions for appointment of counsel and for an evidentiary hearing will be granted. As Petitioner has cogently directed the Court to genuine issues of fact regarding the purported plea offer, summary judgment is inappropriate at this time. Plaintiff's motion for summary judgment will be denied without prejudice. Likewise, as Petitioner's counsel will be entitled to access the Rule 5 materials filed by Respondent and share them with Petitioner, Petitioner's motion to compel production of the Rule 5 materials will be denied as moot. Finally, pursuant to 18 U.S.C. § 636(b)(1)(B), the Court will refer the evidentiary hearing to Magistrate Judge Charles Binder for a report and recommendation on whether Petitioner's ineffective assistance of counsel claim warrants habeas corpus relief.

## IV

Accordingly, it is **ORDERED** that Petitioner's motion for the appointment of counsel (ECF No. 43) is **GRANTED**.

It is further **ORDERED** that David Koelzer of the Federal Defenders Office in Flint is **APPOINTED** to represent Petitioner.

It is further **ORDERED** that Petitioner's motion for an evidentiary hearing (ECF No. 42) is **GRANTED**.

It is further **ORDERED** that Petitioner's motion for summary judgment (ECF No. 39) is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that Petitioner's motion to compel production of the Rule 5 materials (ECF No. 41) is **DENIED AS MOOT**.

It is further **ORDERED** that the evidentiary hearing on whether Petitioner's claim warrants habeas corpus relief is **REFERRED** to United States Magistrate Judge Charles E. Binder. The evidentiary hearing shall be limited to Petitioner's claim that he was denied his right to effective assistance of counsel based on his counsel not communicating the plea offer to Petitioner.

Dated: June 29, 2012

                                                            s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Samuel Ambrose, #159367 at Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846 by first class U.S. mail on June 29, 2012.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS